**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| AMERICAN GNC CORPORATION, | |
| Plaintiff, | Civil Action No. 2:17-cv-107 |
| v. | |
| ZTE CORPORATION,<br>ZTE (USA) Inc., and<br>ZTE (TX) Inc. | JURY TRIAL DEMANDED |
| Defendants. | |

---

## COMPLAINT

---

Plaintiff American GNC Corporation files this Complaint for patent infringement under the patent laws of the United States, Title 35 of the United States Code against Defendants ZTE Corporation, ZTE (USA) Inc., and ZTE (TX) Inc. (collectively "ZTE") and alleges as follows:

**PARTIES**

1.     Plaintiff American GNC Corporation ("AGNC") is a California corporation with its principal place of business at 888 Easy Street, Simi Valley, California 93065 that specializes in inventing and applying advanced and innovative technologies to contemporary problems within the fields of Guidance, Navigation, Control and Communications (GNCC), Inertial Sensors, Health Monitoring, Intelligent Processing, and Autonomous Robotics.

2.      Defendant ZTE Corporation is a corporation duly organized and existing under the laws of the People's Republic of China, with its principal place of business at ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Guangdong Province, People's Republic of China 518057.   On information and belief, ZTE Corporation can be served with process at that address.

3.      Defendant ZTE (USA) Inc. is a corporation duly organized and existing under the laws of New Jersey, with its principal place of business at 2425 N. Central Expressway, Suite 600, Richardson, Texas 75080. ZTE (USA) Inc. can be served with process through its registered agent, Jing Li, 2425 N. Central Expressway, Suite 323, Richardson, Texas 75080.

4.      ZTE (TX) Inc. is a corporation duly organized and existing under the laws of Texas, with its principal place of business located at 1900 McCarthy Boulevard, Suite 205, Milpitas, California 95035. ZTE (TX) Inc. can be served with process through its registered agent Ferguson, Braswell, & Fraser, PC at 2500 Dallas Parkway, Suite 600, Plano, TX 75093.

5.      ZTE makes, uses, imports, sells and offers for sale wireless mobile devices including smartphones and tablets, and related applications and services.

6.      ZTE is ranked by independent industry analysts as the fourth-largest supplier of mobile devices in the U.S.

**JURISDICTION AND VENUE**

7.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., and more particularly 35 U.S.C. § 271.

8.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.     Each ZTE Defendant is subject to this Court's general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, due at least to its substantial business conducted in this District, including: (i) having solicited business in the State of Texas, transacted business within the State of Texas and attempted to derive financial benefit from residents of the State of Texas in this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District, and (iii) having committed the complained of tortious acts in Texas and in this District.

10.     ZTE, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website, http://www.zteusa.com, as well as other retailers) its products and/or services in the United States, the State of Texas, and the Eastern District of Texas.

11.     ZTE, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas. ZTE has committed

3

acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

12.     In addition, Defendant ZTE (USA) Inc. is registered to do business in the State of Texas and headquartered in this District in Richardson, Texas.  Defendant ZTE (TX) Inc. is a Texas corporation and has appointed a registered agent in in this District in Plano, Texas as its agent for service of process. This Court's exercise of personal jurisdiction over ZTE is consistent with the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and traditional notions of fair play and substantial justice.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391 (b) and (c) and 1400(b).  Defendants are subject to personal jurisdiction in this District, have transacted business in this District, and have committed acts of patent infringement in this District.

**BACKGROUND**

14.     AGNC was founded by Ching-Fang Lin, Ph.D. in 1986 as a California corporation. AGNC's headquarters are at 888 Easy Street, Simi Valley, California 93065. AGNC is the owner of record and assignee of 79 issued United States patents, including the Patents-in-Suit.

15.     Dr. Lin previously received his doctorate in Computer, Information, and Control Engineering from the University of Michigan in Ann Arbor.

16.     Dr. Lin authored over 400 technical publications and was responsible for over 100 patent application filings at AGNC, including as an inventor on each of the Patents-in-Suit.

17.     Dr. Lin was responsible for over 1,000 government contract reports and led the effort to introduce over 30 Guidance, Navigation, Control and Communications (GNCC) products.

18.     Dr. Lin's achievements and awards include: SBA Small Business Person of the Year 2002, NASA Space Act Award Recognition for Inventions and Scientific and Technical Exceptional Contributions, Multiple Multiyear NASA Innovative Invention Award, Donald P. Eckman Award Nominee for Outstanding Control Engineer, Nominee for the Mechanics and Control of Flight Award, among many others.

19.     AGNC is an operating high technology company that specializes in inventing and applying advanced and innovative technologies to contemporary problems within the fields of Guidance, Navigation, Control and Communications (GNCC), Inertial Sensors, Health Monitoring, Intelligent Processing, and Autonomous Robotics.

20.     Since its establishment in 1986, AGNC has been actively involved in pioneering efforts related to inertial sensors, interruption-free positioning, and INS/GNSS fusion technologies that AGNC has invented, which are disclosed in its extensive patent portfolio.  AGNC made the world's first MEMS rate integrating gyroscope in 1999, setting the stage for development of its coremicro® IMU product series.

21.     AGNC is also among the very first companies to patent micro-electromechanical (MEMS) Inertial Measurement Unit ("IMU") technology, which is commonly found in most handheld consumer electronics such as tablets and smartphones.

22.     AGNC analyzed positioning technologies and led breakthrough efforts during the late 1990's for the fusion of inertial data with other sources.

23.     AGNC's patented solutions are now found on consumer devices for applications such as indoor or urban navigation.

24.     More information about Plaintiff and its products can be found at AGNC's website, www.americangnc.com.

25.     As of the date of this complaint, AGNC has licensed its patents to four companies, including one direct competitor of ZTE.

26.     Prior to filing this lawsuit, AGNC diligently attempted to resolve its claims against ZTE without litigation.

27.     ZTE has refused to enter into a license agreement with AGNC.

**THE PATENTS-IN-SUIT AND CLAIMS-IN-SUIT**

28.     AGNC is the owner of record and assignee of each of U.S. Patent Nos. 6,311,555; 6,415,227; 6,508,122; 6,516,283; 6,671,648; 6,697,758; and 6,792,353 (the "Patents-in-Suit").

29.     AGNC had and has the exclusive right to sue and recover damages for infringement of the Patents-in-Suit during all relevant time periods.

30.     On November 6, 2001, U.S. Patent No. 6,311,555 (the "'555 Patent") entitled "Angular Rate Producer with Microelectromechanical System Technology" was duly and legally issued by the United States Patent and Trademark Office ("USPTO").

31.     On July 2, 2002, U.S. Patent No. 6,415,227 (the "'227 Patent") entitled "Enhanced Global Positioning System and Map Navigation Process" was duly and legally issued by the USPTO.

32.    On January 21, 2003, U.S. Patent No. 6,508,122 (the "'122 Patent") entitled "Microelectromechanical System for Measuring Angular Rate" was duly and legally issued by the USPTO.

33.    On February 4, 2003, U.S. Patent No. 6,516,283 (the "'283 Patent") entitled "Core Inertial Measurement Unit" was duly and legally issued by the USPTO.

34.    On December 30, 2003, U.S. Patent No. 6,671,648 (the "'648 Patent") entitled "Micro Inertial Measurement Unit" was duly and legally issued by the USPTO.

35.    On February 24, 2004, U.S. Patent No. 6,697,758 (the "'758 Patent") entitled "Processing Method for Motion Measurement" was duly and legally issued by the USPTO.

36.    On September 14, 2004, U.S. Patent No. 6,792,353 (the "'353 Patent") entitled "Enhanced Inertial Measurement Unit/Global Positioning System Mapping and Navigation Process" was duly and legally issued by the USPTO.

37.    AGNC asserts that ZTE has been and now is infringing, directly and by inducement, at least the following claims of the Patents-in-Suit in this District and elsewhere in the United States:

- '555 Patent - claim 49;

- '227 Patent – claims 1, 2, 3, and 36;

- '122 Patent – claim 1;

- '283 Patent – claims 1 and 3;

- '648 Patent – claims 1 and 4;

- '758 Patent – claim 1; and

- '353 Patent – claims 1, 2, 3, 6, and 7.

**ZTE'S INFRINGING PRODUCTS**

38.     ZTE has been, and now is, directly infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the below accused smartphones, tablets, and other mobile wireless devices in this District and elsewhere in the United States that include the systems claimed in the Patents-in-Suit and/or by using the methods claimed in the Patents-in-Suit, including, for example, ZTE's use of said methods during set-up, testing, and demonstration of its smartphones and tablets.

39.     ZTE has been and now is inducing the direct infringement of method claims of the Patents-in-Suit pursuant to U.S.C. § 271(b) at least by one or more of making, using, offering for sale, selling and/or importing the below accused smartphones, tablets, and other mobile wireless devices in this District and elsewhere in the United States that were designed and intended to use and/or practice the methods and processes covered by the Patents-in-Suit.  Further, ZTE has induced infringement by, for example, providing user guides and other support materials and services to its users and by advertising features that are used, and benefits that are achieved through use of the Patents-in-Suit; as one example, ZTE's Axon User Manual encourages users to use Google Apps including Maps that allow the ZTE customer to "Find your place and find your way in the world."

40.     Despite ZTE's awareness of the Patents-in-Suit, ZTE has continued these acts of inducement with specific intent to cause and encourage direct infringement of the Patents-in-Suit with willful blindness that such activities occurred, are still occurring, and constitute direct infringement of the Patents-in-Suit.

**ZTE'S KNOWLEDGE OF THE PATENTS-IN-SUIT, HOW THEY ARE INFRINGED, AND CONTINUED INFRINGEMENT DESPITE THAT KNOWLEDGE**

41.     ZTE has been aware of the Patents-in-Suit no later than June 29, 2016, when a letter dated June 29, 2016 was delivered via email to J. Ray Wood, ZTE's Chief Patent Counsel from Global IP Law Group, LLC, on behalf of AGNC.

42.     The June 29, 2016 letter identifies the Patents-in-Suit and the ZTE products and methods AGNC contends infringes them.

43.     Claim charts setting forth AGNC's contentions of infringement were included with the letter.

44.     On August 31, 2016, AGNC, through counsel, and ZTE had an in-person meeting to discuss AGNC's infringement claim.

45.     During the August 31, 2016 meeting, AGNC (through Global IP Law Group) explained AGNC's infringement contentions to ZTE.

46.     During the August 31, 2016 meeting, AGNC (through Global IP Law Group) conveyed a licensing settlement offer to ZTE.

47.     On September 1, 2016, AGNC (through Global IP Law Group) sent ZTE a supplemental '227 patent claim chart and re-sent ZTE the initial claim charts that it previously sent on June 29, 2016, together with a list of AGNC's patents.

48.     In addition to the June 29, 2016 letter and claim charts, this Complaint serves as additional notice to ZTE of the Patents-in-Suit and the manner in which they are infringed.

49.     AGNC, through counsel, has attempted to follow up with ZTE, including via email on October 11, 2016 and December 6, 2016.

50.     ZTE has not responded to AGNC's attempts to communicate since the August 31, 2016 meeting.

51.     ZTE has not agreed to enter into a licensing agreement with AGNC.

52.     ZTE has not provided AGNC any licensing proposal.

53.     ZTE has never communicated to AGNC any argument that it does not infringe the Asserted Claims of the Patents-in-Suit.

54.     ZTE has never communicated to AGNC any argument that the Asserted Claims of the Patents-in-Suit are invalid for any reason.

55.     Despite knowledge of the Patents-in-Suit and knowledge of the manner in which the Patents-in-Suit are infringed as demonstrated in the provided claim charts, ZTE has continued to infringe and induce the infringement of the Patents-in-Suit.

**COUNT I: INFRINGEMENT OF PAT. 6,508,122 CLAIM 1**

56.     AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

57.     Claim 1 of the '122 Patent provides:

| Preamble to Claim 1 | A microelectromechanical system (MEMS) for measuring angular rate of a carrier, comprising: |
|---|---|
| Element A | an angular rate sensor unit receiving dither driver signals, capacitive pickoff excitation signals and a displacement restoring signal and outputting angle rate signals in response to motion of said carrier and dither motion signals; |
| Element B | a central circuitry receiving said angle rate signals in response to said motion of said carrier and said dither motion signals and outputting angular rate signals and digital low frequency inertial element displacement signals; and |
| Element C | a digital signal processing system analyzing said digital low frequency inertial element displacement signals and feeding back said dither driver signals to said angular rate sensor unit. |

58.     ZTE makes, uses, sells, offers for sale, and imports wireless mobile devices, including mobile phones and tablets that include a MEMS gyroscope (e.g., InvenSense gyroscope) ("Accused Gyroscope Products"). The Accused Gyroscope Products include, for example, at least the Nubia Z7 Mini, Avid Plus, Axon 7, Axon 7 Mini, Zmax Pro, Grand X 3, Grand Memo II, and the AT&T Trek 2.

59.     ZTE has and continues to make, use, sell, import, and/or offer for sale the Accused Gyroscope Products that meet each and every element of claim 1 of the '122 Patent.

60.     The gyroscopes in the Accused Gyroscope Products are microelectromechanical systems ("MEMS") for measuring angular rate.

61.     The Accused Gyroscope Products contain an InvenSense MPU-6500 IMU or a substantially similar IMU or gyroscope (such as other InvenSense or STMicroelectronics IMUs or gyroscopes).

62.     For example, the Nubia Z7 Mini has an InvenSense MPU-6500 inertial measurement unit.

63.     The InvenSense MPU-6500 has a three-axis MEMS gyroscope.

64.     A gyroscope measures angular rate.

65.     The Accused Gyroscope Products' gyroscope contains an angular rate sensor unit (e.g., drive element, proof mass, drive sensor, and Coriolis sensor).

66.     The angular rate sensor unit receives driving signals (e.g., dither driver signals).

67.     For example, the angular rate sensor unit's drive element receives driving signals (e.g., dither driver signals).

68.     The angular rate sensor unit receives capacitive pickoff excitation signals.

69.     For example, the angular rate sensor unit's Coriolis sensor senses the movement of the proof mass(es) (e.g., capacitive pickoff excitation signals).

70.     The angular rate sensor unit receives a displacement restoring signal.

71.     For example, the amplitude, hence displacement, of the angular rate sensor unit's proof mass(es) are controlled by an amplitude control signal (e.g., displacement restoring signal).

72.     The gyroscope contains a driving structure that uses driving signals (e.g., dither driver signal) to oscillate a moveable mass(es) (e.g., proof masses, inertial elements).

73.     For example, InvenSense gyroscopes have a drive-loop that oscillates (e.g., vibrates) the structure, a sense path that detects the motion caused by Coriolis acceleration, a synchronous demodulator that recovers the rotation signal, and an ADC that provides digital output to a motion processor.

74.     InvenSense gyroscopes have amplitude control circuitry to maintain the vibration amplitude.

75.     InvenSense gyroscopes' proof mass(es) is/are driven out-of-plane to resonate by torque exerted by parallel-plate electrodes, (e.g., dither driver signals) while also providing amplitude control (e.g., control of the displacement, or amplitude, of the torsion plates) that is used to maintain momentum.

76.     The oscillating mass(es), when subjected to rotation, cause/causes a capacitance change.

77.     The capacitance change is received by the angular sensor unit (e.g., the angular sensor unit's Coriolis sensor) in the form of a capacitive pickoff excitation signal.

78.     For example, in the InvenSense MPU-6500 gyroscope, when rotated, the Coriolis effect causes a vibration that is detected by a capacitive pickoff.

79.     The angular rate sensor unit (e.g., the angular sensor unit's drive sensor) receives a displacement restoring signal that indicates the movement of the mass(es) in the drive direction.

80.      The capacitance change that is picked up by the angular rate sensor is used to produce angle rate signals in response to the capacitance change that is a result of the motion of the Accused Gyroscope Products.

81.     For example, the InvenSense MPU-6500 gyroscope has digital-output X-, Y-, and Z-axis angular rate sensors for outputting the angle rate signals in response to the motion of the carrier.

82.     In the InvenSense MPU-6500 gyroscope, the resulting signal is amplified, demodulated, and filtered to produce a voltage that is proportional to the angular rate.

83.     Signals produced by, e.g., the drive sensor of the angular rate sensor unit (dither motion signals) are fed into central circuitry.

84.     InvenSense gyroscope architecture provides digital output to a motion processor.

85.     The Accused Gyroscope Products have central circuitry that receives the angle rate signals from the angular rate sensor unit.

86.     The central circuitry outputs angular rate signals (e.g., X-, Y-, and Z-axis angular rate signals).

87.     The central circuitry receives the dither motion signals from the angular rate sensor unit.

88.     The central circuitry outputs digital low frequency inertial element displacement signals.

89.     InvenSense gyroscopes include a drive-loop that consists of a capacitive position sensing stage followed by a phase detector, or oscillator, to oscillate the MEMS structure at resonance.

90.     A drive sense amplifier (Op Amp in parallel with a capacitor, or electronic current integrator, that inherently acts as a low pass filter) processes the dither motion signals into low frequency inertial element displacement signals.

91.     The low frequency inertial element displacement signals feed into a comparator, or similar component, and result in digital low frequency inertial element displacement signals.

92.     The InvenSense gyroscope architecture also includes amplitude control circuitry that effectively controls the displacement of the inertial elements.

93.     InvenSense gyroscopes contain circuitry that recovers, e.g., receives, the angle rate signals that are in response to motion of the Accused Gyroscope Products and receives the vibration at resonance due to the drive loop (e.g., dither motion signals).

94.     InvenSense gyroscopes receive the angular rate signals via a sense path with a synchronous demodulator.

95.     The Accused Gyroscope Products have a digital processing system that analyzes the digital low frequency inertial element displacement signals.

96.     The digital processing system feeds the dither driver signals to the angular rate sensor unit.

97.     The digital low frequency inertial element displacement signals feed into a control loop that controls the oscillation of the inertial elements/proof masses.

98.     For example, the InvenSense gyroscope's drive loop includes a phase detector (or an oscillator (e.g., phase lock loop, etc.)) that outputs an in-phase signal (which is in phase with the drive signal) to a drive mixer for mixing with the output of an AGC circuit to generate a drive signal.

99.     The drive signal is then amplified by a drive amplifier and provided to the drive element that generates the force to vibrate the proof mass(es).

100.     InvenSense gyroscopes utilize a phase detector, or oscillator, such as a Phase-Lock Loop ("PLL") in the digital processing system to control the phase and an Automatic Gain Control ("AGC"), or similar component, to control the amplitude.

101.     Direct infringement of claim 1 occurs when ZTE makes, imports, uses, sells and offers for sale the Accused Gyroscope Products that meet claim 1 of the '122 Patent.

102.     ZTE has knowledge of the '122 Patent and AGNC's allegations of how the Accused Gyroscope Products infringe claim 1 of the '122 Patent since at least June 29, 2016.

103.     ZTE makes, uses, offers to sell, sells, and/or imports the Accused Gyroscope Products knowing that the Accused Gyroscope Products infringe claim 1 of the '122 Patent.

## COUNT II: INFRINGEMENT OF PAT. 6,311,555 CLAIM 49

104.   AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

105.   Claim 49 of the '555 Patent provides:

| Preamble to Claim 49 | An angular rate producing process for measuring a vehicle angular rate, comprising the steps of: |
|---|---|
| Element A | (a) receiving dither drive signal to maintain an oscillation of at least one set of inertial elements in an angular rate detecting unit with constant momentum, and producing angular motion-induced signals with respect to said vehicle angular rate and inertial element dither motion signals; |
| Element B | (b) converting said angular motion-induced signals from said angular rate detecting unit in an interfacing circuitry into consistent and repeatable angular rate signals that are proportional to said vehicle angular rate, and converting said inertial element dither motion signals from said angular rate detecting unit in said interfacing circuitry into digital element displacement signals with predetermined phase; and |
| Element C | (c) inputting said digital element displacement signals into a digital processing system and producing said dither drive signal for locking high-quality factor frequency and amplitude of said oscillating inertial elements in said angular rate detecting unit. |

106.   ZTE makes, uses, sells, offers for sale, and imports wireless mobile devices, including mobile phones and tablets that include a MEMS gyroscope (e.g. InvenSense gyroscope) ("Accused Gyroscope Products"). The Accused Gyroscope Products include, for example, at least the Nubia Z7 Mini, Avid Plus, Axon 7, Axon 7 Mini, Zmax Pro, Grand X 3, Grand Memo II, and the AT&T Trek 2.

107.   ZTE has and continues to make, use, sell, import, and/or offer for sale Accused Gyroscope Products, the use of which meets each and every element of claim 49 of the '555 Patent.

108.   The Accused Gyroscope Products perform an angular rate producing process for measuring an angular rate.

109.    The Accused Gyroscope Products contain an InvenSense MPU-6500 inertial measurement unit or a substantially similar IMU or gyroscope (such as other InvenSense or STMicroelectronics IMUs or gyroscopes).

110.    For example, the Nubia Z7 Mini contains an InvenSense MPU-6500 inertial measurement unit.

111.    The InvenSense MPU-6500 has a three-axis MEMS gyroscope.

112.    A gyroscope measures angular rate.

113.    The InvenSense MPU-6500 has an angular rate detecting unit (e.g., drive element, proof mass, drive sensor, and Coriolis sensor).

114.    The Accused Gyroscope Products contain a driving structure that uses a driving signal (e.g., dither drive signal) to oscillate a set of moveable masses (e.g., proof masses, inertial elements).

115.    InvenSense gyroscopes have a drive-loop that oscillates (e.g., vibrates) the driving structure (e.g., vibration at resonance), a sense path that detects the motion caused by Coriolis acceleration, a synchronous demodulator that recovers the rotation signal, and an ADC that provides digital output to a motion processor.

116.    InvenSense gyroscopes have amplitude control circuitry to maintain constant momentum (e.g., constant vibration amplitude) (e.g., a set of moveable masses are in oscillation with constant momentum).

117.    InvenSense gyroscopes' proof masses are driven out-of-plane to resonate by torque exerted by parallel-plate electrodes (e.g., dither drive signals) while also providing amplitude control (e.g., control of the displacement, or amplitude, of the torsion plates) that are used to constantly drive the momentum.

118.    In the InvenSense gyroscope architecture, a flexibly connected drive system and sense system creates two resonant modes and a drive resonant frequency.

119.    The InvenSense gyroscope has drive signals that drive the proof masses/inertial elements at a resonant frequency to maintain constant momentum.

120.    The movement of the proof masses due to rotation causes a capacitance change that is picked up by the sensing structure (e.g., Coriolis sensor) that produces a voltage signal in response.

121.    The voltage signal is proportional to the applied angular rate, e.g., the voltage signal produced is an angular motion-induced signal with respect to the vehicle angular rate of the Accused Gyroscope Products.

122.    For example, the InvenSense MPU-6500 gyroscope has digital-output X-, Y-, and Z-axis angular rate sensors for outputting the angular motion-induced signals (e.g., the voltage signal produced).

123.    In the InvenSense MPU-6500 gyroscope, the voltage signal produced is amplified, demodulated, and filtered to produce a voltage signal that is proportional to the angular rate.

124.    Signals produced by, e.g., the drive sensor of the gyroscope (inertial element dither motion signals) are fed into interfacing circuitry.

125.    The Accused Gyroscope Products' gyroscope converts the angular motion-induced signals from the angular detecting unit in an interfacing circuitry into consistent and repeatable angular rate signals (e.g., X-, Y-, and Z-axis angular rate signals).

126.    The consistent and repeatable angular rate signals are proportional to the vehicle angular rate.

127.    For example, the InvenSense gyroscope architecture includes a sense path that detects the motion caused by Coriolis acceleration, a synchronous demodulator that recovers the rotation signal, and an ADC that provides digital output to a motion processor.

128.    The Accused Gyroscope Products' gyroscope converts the inertial element dither motion signals from the angular rate detecting unit in interfacing circuitry into digital element displacement signals.

129.    The digital element displacement signals have a predetermined phase.

130.    For example, in the InvenSense gyroscope architecture, the drive-loop consists of a capacitive position sensing stage followed by a phase detector, or oscillator, to oscillate the MEMS structure at resonance.

131.    The InvenSense gyroscope architecture also includes amplitude control circuitry that effectively controls the displacement of the inertial elements.

132.    The Accused Gyroscope Products' gyroscope inputs the digital element displacement signals into a digital processing system and produces the dither drive signal.

133.    The dither drive signal locks the high-quality factor frequency of the oscillating inertial elements in the angular rate detecting unit.

134.    The dither drive signal locks the amplitude of the oscillating inertial elements in the angular rate detecting unit.

135.    The digital element displacement signals are input to a phase locked loop to lock a high-quality factor frequency.

136.    The phase locked loop elements feed into a controller that controls the oscillation of the inertial elements.

137.    For example, the InvenSense gyroscope's drive loop includes a phase detector (or an oscillator (e.g., phase lock loop, etc.)) that outputs an in-phase signal (which is in phase with the drive signal) to a drive mixer for mixing with the output of an AGC circuit to generate a drive signal.

138.    The drive signal is then amplified by a drive amplifier and provided to the drive element that generates the force to vibrate the proof mass.

139.    InvenSense gyroscopes utilize a phase detector or oscillator such as a Phase-Lock Loop ("PLL") in the digital processing system to control the phase and an Automatic Gain Control ("AGC"), or similar component, to control the amplitude.

140.    Direct infringement of claim 49 of the '555 Patent occurs whenever the Accused Gyroscope Products' gyroscope is active while the Accused Gyroscope Products are used in/on a vehicle.

141.    ZTE infringes claim 49 of the '555 Patent by making and selling the Accused Gyroscope Products designed to practice the claimed process.

142.    In addition, ZTE infringes claim 49 of the '555 Patent by using the Accused Gyroscope Products directly, including in relation to product testing.

143.    In the alternative, ZTE induces infringement of claim 49 of the '555 Patent by end users including by distributing the Accused Gyroscope Products that practice the claimed process in ordinary use.

144.    The Accused Gyroscope Products' gyroscope is active, at least some of the time, whenever ZTE or its customers operate the Accused Gyroscope Products.

145.    ZTE has knowledge of the '555 Patent and AGNC's allegations of how the Accused Gyroscope Products infringe claim 49 of the '555 Patent since at least June 29, 2016.

146.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused Gyroscope Products knowing that ZTE has infringed and continues to infringe at least claim 49 of the '555 Patent, when the Accused Gyroscope Products' gyroscope was or is active, under 35 U.S.C. § 271(a) directly.

147.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused Gyroscope Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 49 of the '555 Patent, including when the Accused Gyroscope Products' gyroscope was or is active.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 49 of the '555 Patent under 35 U.S.C. § 271(b).

148.    ZTE has had actual knowledge of the '555 Patent since at least June 29, 2016.

149.    ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 49 of the '555 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused Gyroscope Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 49 of the '555 Patent by using the Accused Gyroscope Products' gyroscope.

**COUNT III: INFRINGEMENT OF PAT. 6,671,648 CLAIM 1**

150.    AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

151.    Claim 1 of the '648 Patent provides:

| Preamble of Claim 1 | A micro inertial measurement unit, comprising: |
|---|---|
| Element A | an angular rate producer comprising a X axis angular rate detecting unit which produces a X axis angular rate electrical signal, a Y axis angular rate detecting unit which produces a Y axis angular rate electrical signal, and a Z axis angular rate detecting unit which produces a Z axis angular rate electrical signal; |
| Element B | an acceleration producer comprising a X axis accelerometer which produces a X axis acceleration electrical signal, a Y axis accelerometer which produces a Y axis acceleration electrical signal, and a Z axis accelerometer which produces a Z axis acceleration electrical signal; and |
| Element C | an angular increment and velocity increment producer, which is electrically connected with said X axis, Y axis and Z axis angular rate detecting units and said X axis, Y axis and Z axis accelerometers, receiving said X axis, Y axis and Z axis angular rate electrical signals and said X axis, Y axis and Z axis acceleration electrical signals from said angular rate producer and said acceleration producer respectively, wherein said X axis, Y axis and Z axis angular rate electrical signals and said X axis, Y axis and Z axis acceleration electrical signals are converted into are digital angular increments and digital velocity increments respectively. |

152.    ZTE makes, uses, sells, offers for sale and imports wireless mobile devices, including mobile phones and tablets that include an IMU ("Accused IMU Products"). The Accused IMU Products include, at least the Nubia Z7 Mini, Avid Plus, Axon 7, Axon 7 Mini, Zmax Pro, Grand X 3, Grand Memo II, and the AT&T Trek 2.

153.    ZTE has and continues to manufacture, use, sell, import, and/or offer for sale Accused IMU Products that meet and/or are used to meet each and every element of claim 1 of the '648 Patent.

154.    The Accused IMU Products contain a micro-electro-mechanical ("MEMS") gyroscope.

155.    The Accused IMU Products contain a MEMS accelerometer.

156.    The Accused IMU Products contain a micro IMU comprised of a gyroscope and accelerometer.

157.    For example, the Nubia Z7 Mini comprises an InvenSense MPU-6500.

158.    The InvenSense MPU-6500 includes a triple-axis MEMS gyroscope.

159.    The InvenSense MPU-6500 includes a triple-axis MEMS accelerometer.

160.    The Accused IMU Products' gyroscope senses angular rotation about three axes.

161.    The Accused IMU Products' gyroscope is an angular rate producer that produces angular rate signals for three axes.

162.    The Accused IMU Products' accelerometer senses acceleration about three axes.

163.    The Accused IMU Products' accelerometer is an acceleration producer that produces acceleration signals for three axes.

164.    The Accused IMU Products' IMU has an angular increment and velocity increment producer that is electrically connected with the gyroscope and accelerometer.

165.    The angular increment and velocity increment producer receives the angular rate and acceleration electrical signals.

166.    The angular increment and velocity increment producer converts the angular rate electrical signals into digital angular increments.

167.    The angular increment and velocity increment producer converts acceleration electrical signals into digital velocity increments.

168.    For example, the Nubia Z7 Mini's InvenSense MPU-6500 has an embedded Digital Motion Processor (DMP) that offloads computation of motion processing algorithms from the host processor.

169.    The DMP acquires data from accelerometers and gyroscopes and processes the data.

170.    Velocity is obtained by a single integration of the accelerometer signal.

171.    Relative angle is obtained by a single integration of the gyroscope signal.

172.    The Accused IMU Products have an Android operating system.

173.    An Android operating system is pre-loaded on each Accused IMU Product before the product reaches the end-user.

174.    Android devices integrate the output of the gyroscope (*i.e.,* convert the angular rate signal) to calculate a rotation describing the change of angles over time (*i.e.,* angular increment or delta rotation).

175.    In Android, the accelerometer provides velocity (e.g., how fast your car is going) after integration.

176.    The Accused IMU Products' inertial measurement unit utilizes sensor fusion algorithms.

177.     InvenSense's sensor fusion algorithms integrate the gyroscope signal to obtain angle rather than angular rate.

178.    The determination of angle from the angular rate necessarily requires the conversion to an angular increment.

179.    Angular increments are obtained during the process by which angle is obtained from angular rate.

180.    InvenSense's sensor fusion algorithms integrate the accelerometer signal to obtain velocity.

181.    The determination of velocity from the acceleration necessarily requires the conversion to a velocity increment.

182.    Velocity increments are obtained during the process by which velocity is obtained from acceleration.

183.    Direct infringement of claim 1 of the '648 Patent occurs when ZTE makes, uses, offers to sell, sells or imports the Accused IMU Products.

184.    ZTE has knowledge of the '648 Patent and AGNC's allegations of how the Accused IMU Products infringe claim 1 of the '648 Patent since at least June 29, 2016.

**COUNT IV: INFRINGEMENT OF PAT. 6,671,648 CLAIM 4**

185.    AGNC reasserts and realleges paragraphs 1 through 55, and paragraphs 151 through 184 of this Complaint as though set forth fully here.

186.    Claim 4 of the '648 Patent provides:

| Claim 4 | A micro inertial measurement unit, as recited in claim 1, wherein said X axis, Y axis and Z axis angular rate electrical signals produced from said angular producer are analog angular rate voltage signals directly proportional to angular rates of a carrier carrying said micro inertial measurement unit, and said X axis, Y axis and Z axis acceleration electrical signals produced from said acceleration producer are analog acceleration voltage signals directly proportional to accelerations of said vehicle. |
|---|---|

187.    The Accused IMU Products meet and/or are used to meet each of the limitations of claim 4 of the '648 Patent.

188.    The Accused IMU Products' gyroscope has an angular producer.

189.    The angular producer produces analog angular rate voltage signals.

190.    The angular rate voltage signals are directly proportional to the angular rate of the Accused IMU Products.

191.    For example, the Nubia Z7 Mini's InvenSense MPU-6500 gyroscope produces analog angular rate signals that are digitized in an Analog-to-Digital converter (ADC).

192.    The resulting signals are proportional to the angular rate along a particular axis.

193.    The Accused IMU Products' accelerometer has an acceleration producer.

194.    The acceleration producer produces analog acceleration voltage signals.

195.    The acceleration voltage signals are directly proportional to the acceleration of the Accused IMU Products.

196.    For example, the Nubia Z7 Mini's InvenSense MPU-6500's accelerometer produces acceleration signals that are digitized in an Analog-to-Digital converter ("ADC").

197.    The resulting signals are proportional to the acceleration along a particular axis.

198.    Direct infringement of claim 4 of the '648 Patent occurs when ZTE makes, uses, offers to sell, sells, or imports the Accused IMU Products.

199.    ZTE has knowledge of the '648 Patent and AGNC's allegations of how the Accused IMU Products infringe claim 4 of the '648 Patent since at least June 29, 2016.

## COUNT V: INFRINGEMENT OF PAT. 6,697,758 CLAIM 1

200.    AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

201.    Claim 1 of the '758 Patent provides:

| Preamble of Claim 1 | A processing method for motion measurement, comprising the steps of: |
| --- | --- |
| Element A | (a) producing three-axis angular rate signals by an angular rate producer and three-axis acceleration signals by an acceleration producer; |
| Element B | (b) converting said three-axis angular rate signals into digital angular increments and converting said three-axis acceleration signals into digital velocity increments in an angular increment and velocity increment producer; and |
| Element C | (c) computing attitude and heading angle measurements using said three-axis digital angular increments and said three-axis velocity increments in an attitude and heading processor. |

202.    ZTE makes, uses, sells, offers for sale and imports wireless mobile devices, including mobile phones and tablets that include an IMU ("Accused IMU Products"). The Accused IMU Products include, at least the Nubia Z7 Mini, Avid Plus, Axon 7, Axon 7 Mini, Zmax Pro, Grand X 3, Grand Memo II, and the AT&T Trek 2.

203.    ZTE has and continues to manufacture, use, sell, import, and/or offer for sale Accused IMU Products that are used to meet each and every element of claim 1 of the '758 Patent.

204.    The Accused IMU Products contain a gyroscope.

205.    The Accused IMU Products contain an accelerometer.

206.    The Accused IMU Products contain an IMU that comprises a gyroscope and accelerometer.

207.    For example, the Nubia Z7 Mini comprises an InvenSense MPU-6500.

208.    The InvenSense MPU-6500 includes a triple-axis MEMS gyroscope.

209.    The InvenSense MPU-6500 includes a triple-axis MEMS accelerometer.

210.    The Accused IMU Products' gyroscope senses angular rotation about three axes.

211.    The Accused IMU Products' gyroscope is an angular rate producer that produces angular rate signals for three axes.

212.    The Accused IMU Products' accelerometer senses acceleration about three axes.

213.    The Accused IMU Products' accelerometer is an acceleration producer that produces acceleration signals for three axes.

214.    The Accused IMU Products' inertial measurement unit has an angular increment and velocity increment producer.

215.    The angular increment and velocity increment producer receives the angular rate and acceleration signals.

216.    The angular increment and velocity increment producer converts the angular rate signals into digital angular increments.

217.    The angular increment and velocity increment producer converts acceleration signals into digital velocity increments.

218.    For example, the Nubia Z7 Mini's InvenSense MPU-6500 has an embedded Digital Motion Processor ("DMP") that offloads computation of motion processing algorithms from the host processor.

219.    The DMP acquires data from accelerometers and gyroscopes and processes the data.

220.    Velocity is obtained by a single integration of the accelerometer signal.

221.    Relative angle is obtained by a single integration of the gyroscope signal.

222.    The Accused IMU Products have an Android operating system.

223.    An Android operating system is pre-loaded on each Accused IMU Product before the product reaches the end-user.

224.    Android devices integrate the output of the gyroscope (*i.e.*, convert the angular rate signal) to calculate a rotation describing the change of angles over time (*i.e.*, angular increment or delta rotation).

225.    In Android, the accelerometer provides velocity (e.g., how fast your car is going) after integration.

226.    The Accused IMU Products' inertial measurement unit utilizes sensor fusion algorithms.

227.    InvenSense's sensor fusion algorithms integrate the gyroscope signal to obtain angle rather than angular rate.

228.    The determination of angle from the angular rate necessarily requires the conversion to an angular increment.

229.    Angular increments are obtained during the process by which angle is obtained from angular rate.

230.    InvenSense's sensor fusion algorithms integrate the accelerometer signal to obtain velocity.

231.    The determination of velocity from the acceleration necessarily requires the conversion to a velocity increment.

232.    Velocity increments are obtained during the process by which velocity is obtained from acceleration.

233.    The Accused IMU Products contain an attitude and heading processor.

234.    For example, the Nubia Z7 Mini has a Qualcomm Snapdragon 801 processor.

235.    The Qualcomm Snapdragon 801 processor includes IZat location technology.

236.    The Qualcomm Snapdragon 801 processor with IZat location technology can always point you in the right direction.

237.    The Qualcomm Snapdragon 801 processor with IZat location technology knows exactly where you are and where you need to go.

238.    For example, the Nubia Z7 Mini's InvenSense MPU-6500's DMP offloads computation of motion processing algorithms from the host processor and acquires data from accelerometers and gyroscopes and processes the data.

239.    InvenSense sensor fusion algorithms provide, for example, Quarternion, Orientation, Motion, and Gestures.

240.    The Accused IMU Products' sensor fusion algorithm (using data from the sensors such as the gyroscope) computes attitude (that is, orientation using e.g., rotation matrix or quaternion representation).

241.    The Accused IMU Products' sensor fusion algorithm (using data from the sensors such as the gyroscope and magnetometer) computes heading.

242.    Direct infringement of claim 1 of the '758 Patent occurs when ZTE and end users use Accused IMU Products in a manner such that they practice the claimed method.

243.    ZTE infringes claim 1 of the '758 Patent by making and selling the Accused IMU Products designed to practice the claimed process.

244.    In addition, ZTE infringes claim 1 of the '758 Patent by using the Accused IMU Products directly, including in relation to product testing.

245.    In the alternative, ZTE induces infringement of claim 1 of the '758 Patent by end users including by distributing the Accused IMU Products that practice the claimed process in ordinary use.

246.    ZTE has knowledge of the '758 Patent and AGNC's allegations of how the Accused IMU Products infringe claim 1 of the '758 Patent since at least June 29, 2016.

247.    ZTE actively induces end users' infringement of claim 1 of the '758 Patent at least by one of more of supplying, offering for sale, and selling the Accused IMU Products that were designed and intended to practice the method in claim 1 of the '758 Patent.

248.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU Products knowing that ZTE has infringed and continues to infringe at least claim 1 of the '758 Patent, when the Accused IMU Products' IMU was or is active, under 35 U.S.C. § 271(a) directly.

249.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 1 of the '758 Patent, including when the Accused IMU Products' IMU was or is active.  ZTE actively induces

customers and end-users to directly infringe each and every claim limitation of at least claim 1 of the '758 Patent under 35 U.S.C. § 271(b).

250.   ZTE has had actual knowledge of the '758 Patent since at least June 29, 2016.

251.   ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 1 of the '758 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused IMU Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 1 of the '758 Patent by using the Accused IMU Products' IMU.

**COUNT VI: INFRINGEMENT OF PAT. 6,516,283 CLAIM 1**

252.   AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

253.   Claim 1 of the '283 Patent provides:

| Preamble of Claim 1 | A core inertial measurement unit, comprising: |
|---|---|
| Element A | an angular rate producer producing X axis, Y axis and Z axis angular rate electrical signals; |
| Element B | an acceleration producer producing X axis, Y axis and Z axis acceleration electrical signals; |
| Element C | an angular increment and velocity increment producer converting said X axis, Y axis and Z axis angular rate electrical signals into three-axis digital angular increments and converting said X axis, Y axis and Z axis acceleration electrical signals into three-axis digital velocity increments; |
| Element D | an Earth's magnetic field detector producing Earth's magnetic field vector measurements; |
| Element E | and a position, attitude and heading processor connected with said angular rate producer, said acceleration producer and said Earth's magnetic field detector, so as to use said three-axis digital angular increments, said three-axis digital velocity increments and said position, attitude and heading angle measurements to compute motion measurements including position, attitude and heading angle measurements. |

254. ZTE makes, uses, sells, offers for sale and imports wireless mobile devices, including mobile phones and tablets that include an IMU and a compass ("Accused IMU/Compass Products"). The Accused IMU/Compass Products include, for example, at least the Nubia Z7 Mini, Axon 7 and Axon 7 Mini.

255. ZTE has and continues to manufacture, use, sell, import, and/or offer for sale Accused IMU/Compass Products that meet each and every element of claim 1 of the '283 Patent.

256. The Accused IMU/Compass Products contain a gyroscope.

257. The Accused IMU/Compass Products contain an accelerometer.

258. The Accused IMU/Compass Products contain an IMU comprised of a gyroscope and accelerometer.

259. For example, the Nubia Z7 Mini comprises an InvenSense MPU-6500.

260. The InvenSense MPU-6500 includes a triple-axis MEMS gyroscope.

261.    The InvenSense MPU-6500 includes a triple-axis MEMS accelerometer.

262.    The Accused IMU/Compass Products' gyroscope senses angular rotation about three axes.

263.    The Accused IMU/Compass Products' gyroscope is an angular rate producer that produces angular rate electrical signals for three axes.

264.    The Accused IMU/Compass Products' accelerometer senses acceleration about three axes.

265.    The Accused IMU/Compass Products' accelerometer is an acceleration producer that produces acceleration electrical signals for three axes.

266.    The Accused IMU/Compass Products have an angular increment and velocity increment producer.

267.    The angular increment and velocity increment producer receives the angular rate and acceleration electrical signals.

268.    The angular increment and velocity increment producer converts the angular rate electrical signals into digital angular increments.

269.    The angular increment and velocity increment producer converts acceleration electrical signals into digital velocity increments.

270.    For example, the Nubia Z7 Mini's InvenSense MPU-6500 has an embedded Digital Motion Processor ("DMP") that offloads computation of motion processing algorithms from the host processor.

271.    The DMP acquires data from accelerometers and gyroscopes and processes the data.

272.    Velocity is obtained by a single integration of the accelerometer signal.

273.   Relative angle is obtained by a single integration of the gyroscope signal.

274.   The Accused IMU/Compass Products have an Android operating system.

275.   The Android operating system is pre-loaded on each Accused IMU/Compass Product before the product reaches the end-user.

276.   Android devices integrate the output of the gyroscope (*i.e.*, convert the angular rate signal) to calculate a rotation describing the change of angles over time (*i.e.*, angular increment or delta rotation).

277.   In the Android operating system, the accelerometer provides velocity (e.g., how fast your car is going) after integration.

278.   The Accused IMU/Compass Product uses sensor fusion algorithms.

279.   InvenSense's sensor fusion algorithms integrate the gyroscope signal to obtain angle rather than angular rate.

280.   The angle is used to determine angular increments.

281.   The determination of angle from the angular rate necessarily requires the conversion to an angular increment.

282.   Angular increments are obtained during the process by which angle is obtained from angular rate.

283.   InvenSense's sensor fusion algorithms integrate the accelerometer signal to obtain velocity.

284.   The determination of velocity from the acceleration necessarily requires the conversion to a velocity increment.

285.   Velocity increments are obtained during the process by which velocity is obtained from acceleration.

286.    The Accused IMU/Compass Products contain a compass (Earth's magnetic field detector).

287.    The compass produces Earth's magnetic field vector measurements.

288.    For example, the Nubia Z7 Mini has an AK09911 Magnetometer.

289.    The AK09911 Magnetometer produces Earth's magnetic field vector measurements.

290.    The Accused IMU/Compass Products contain a position, attitude and heading processor that is connected with the angular rate producer, the acceleration producer, and the Earth's magnetic field detector (compass).

291.    For example, the Nubia Z7 Mini has a Qualcomm Snapdragon 801 processor.

292.    The Qualcomm Snapdragon 801 processor includes IZat location technology.

293.    The Qualcomm Snapdragon 801 processor with IZat location technology can always point you in the right direction and knows exactly where you are and where you need to go.

294.    For example, the Nubia Z7 Mini's InvenSense MPU-6500's DMP offloads computation of motion processing algorithms from the host processor and acquires data from accelerometers and gyroscopes and processes the data.

295.    InvenSense sensor fusion algorithms provide, for example, Quarternions, Orientation, Motion, and Gestures.

296.    The Accused IMU/Compass Products' sensor fusion algorithm (using data from the sensors such as the gyroscope) computes attitude (that is, orientation using e.g., rotation matrix or quaternion representation).

297.    The Accused IMU/Compass Products' sensor fusion algorithm (using data from the sensors such as the gyroscope and compass) computes heading.

298.    The position, attitude and heading processor uses sensor fusion algorithms to provide, e.g., orientation, quaternions, pitch, roll, yaw, and heading measurements (motion measurements).

299.    The sensor fusion algorithms use the digital angular increments, the digital velocity increments, and position, attitude and heading angle measurements to compute motion measurements.

300.     The motion measurements include position, attitude and heading angle measurements.

301.    Direct infringement of claim 1 of the '283 Patent occurs when ZTE makes, uses, offers to sell, sells and imports the Accused IMU/Compass Products.

302.    ZTE has knowledge of the '283 Patent and AGNC's allegations of how the Accused IMU/Compass Products infringe claim 1 of the '283 Patent since at least June 29, 2016.

**COUNT VII: INFRINGEMENT OF PAT. 6,516,283 CLAIM 3**

303.    AGNC reasserts and realleges paragraphs 1 through 55 and paragraphs 253 through 302 of this Complaint as though set forth fully here.

304.    Claim 3 of the '283 Patent provides:

| Claim 3 | A core inertial measurement unit, as recited in claim 1, further comprising a LCD display module, which is connected with said position, attitude and heading processor, providing a display of said motion measurements of said core inertial measurement unit in terms of position, velocity, and attitude data. |
|---|---|

305.    The Accused IMU/Compass Products meet each of the limitations of claim 3 of the '283 Patent.

306.    The Accused IMU/Compass Products contain a LCD display module.

307.    For example, the Nubia Z7 Mini has 5-inch display.

308.    The display module is connected to the position, attitude and heading processor.

309.    The display module provides a display of the motion measurements (position, velocity, and attitude data).

310.    The Accused IMU/Compass Products have an Android operating system.

311.    Google Maps is pre-loaded on each Accused IMU/Compass Product before the product reaches the end-user.

312.    Google Maps' current location blue dot is powered by the Fused Location Provider (FLP) that combines motion measurements from an inertial measurement unit with other sources such as, e.g., GPS, Wi-Fi, and cellular.

313.    For example, when running Google Maps, the Accused IMU/Compass Products display motion measurements (position, velocity, and attitude data).

314.    Direct infringement of claim 3 of the '283 Patent occurs when ZTE makes, uses, offers to sell, sells and imports the Accused IMU/Compass Products.

315.    ZTE has knowledge of the '283 Patent and AGNC's allegations of how the Accused IMU/Compass Products infringe claim 3 of the '283 Patent since at least the date of this Complaint.

**COUNT VIII: INFRINGEMENT OF PAT. 6,792,353 CLAIM 1**

316.    AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

317.    Claim 1 of the '353 Patent provides:

| Preamble of Claim 1 | An enhanced inertial measurement unit/global positioning system and map navigation process, comprising steps of: |
|---|---|
| Element A | (a) receiving a measured position from an integrated inertial measurement unit/global positioning system device, wherein said integrated inertial measurement unit/global positioning system device comprises a micro IMU, a GPS receiver and means for blending measurements from said micro IMU and said GPS receiver; |
| Element B | (b) retrieving geospatial data from a geospatial map database based on said measured position from said integrated inertial measurement unit/global positioning system device by using a tile index file, wherein said tile index file stores geographic extent information of tiles which are geographically subdividing a coverage solely for a purpose of enhancing data management; wherein a geographic extent of an access area is compared with said geographic extent of said tiles to derive a plurality of involved tiles for said access area; |
| Element C | (c) performing time-space filtering based on said measured position and said retrieved geospatial data from said geospatial map database to derive a displaying position for a user; wherein said measured position and a previous position and a previous velocity are used to derive a true position for said user; and |
| Element D | (d) displaying a trajectory of said user on a graphic displaying unit, which tracks a motion of said user. |

318.    ZTE makes, uses, sells, offers for sale and imports wireless mobile devices, including mobile phones and tablets that include an IMU, a GPS transceiver, and

an Android operating system ("Accused IMU/GPS Products").  The Accused IMU/GPS Products include, at least the Axon Pro, Avid Plus, Axon 7, Axon 7 Mini, Zmax Pro, Grand X 3, Grand Memo II, and the AT&T Trek 2.

319.    ZTE has and continues to manufacture, use, sell, import, and/or offer for sale Accused IMU/GPS Products that are used to meet each and every element of claim 1 of the '353 Patent.

320.    The Accused IMU/GPS Products are global positioning systems that perform a map navigation process with a mapping application.

321.    The Accused IMU/GPS Products have an Android operating system.

322.    An Android operating system is pre-loaded on each Accused IMU/GPS Product before the product reaches the end-user.

323.    Accused IMU/GPS Products contain Google Maps.

324.    Google Maps is pre-loaded on each Accused IMU/GPS Products before the product reaches the end-user.

325.    The Accused IMU/GPS Products contain a micro electro-mechanical ("MEMS") gyroscope.

326.    The Accused IMU/GPS Products contain a MEMS accelerometer.

327.    The Accused IMU/GPS Products contain a micro inertial measurement unit that comprises a MEMS gyroscope and MEMS accelerometer.

328.    The Accused IMU/GPS Products contain a GPS transceiver.

329.    The Accused IMU/GPS Products contain a display.

330.    The Accused IMU/GPS Products receive a measured position from an integrated inertial measurement unit/global positioning system device (e.g., IMU and GPS).

331.    The Accused IMU/GPS Products include a Qualcomm Snapdragon processor.

332.    For example, the Axon Pro has a Qualcomm Snapdragon 810 processor.

333.    The Qualcomm Snapdragon processor has Qualcomm IZat location technology that provides ubiquitous location information indoors, outdoors, and urban canyons.

334.     The Qualcomm Snapdragon processor has Qualcomm IZat location technology that offers uninterrupted coverage.

335.    The Accused IMU/GPS Products contain an IMU that is used for sensing motion measurements and produces positioning data.

336.    The Accused IMU/GPS Products' Qualcomm Snapdragon processor's IZat location engine processes measurements from inertial sensors including accelerometers and gyroscopes.

337.    The Accused IMU/GPS Products' GPS receiver provides positioning data.

338.    Qualcomm's IZat contained in the Accused IMU/GPS Products uses positioning data from the IMU and positioning data from the GPS receiver to provide a measured position.

339.    Google Maps is powered by the Fused Location Provider ("FLP") that combines GPS, Wi-Fi, cell, accelerometer, gyroscope, and magnetometer data and manages battery consumption.

340.   The Google Maps FLP incorporates sensor fusion algorithms that combine accelerometer, gyroscope, magnetometer, and barometer with raw GPS pseudoranges.

341.   The Accused IMU/GPS Products blend measurements from the IMU and GPS.

342.   The Accused IMU/GPS Products use a mapping application (e.g., Google Maps) to retrieve geospatial data from a geospatial map database.

343.   The geospatial data is retrieved based on the measured positions from the integrated IMU/GPS system.

344.   The geospatial data is retrieved by using a tile index file.

345.   The tile index file stores geographic extent information of tiles.

346.   The tiles geographically subdivide a coverage for enhancing data management.

347.   The Google Maps API determines which tiles are needed and translates that information into a set of tiles to retrieve.

348.   The geographic extent of an access area (e.g., the access area that is encompassed within the display screen of an Accused IMU/GPS Products) is compared (e.g., using zoom level, map tile location in the grid, etc.) with the geographic extent of the tiles to determine a plurality of involved tiles for the access area.

349.   The Accused IMU/GPS Products use the integrated IMU/GPS system and a mapping application (e.g., Google Maps) to perform time-space-filtering based on the measured position of a device and the retrieved geospatial data from a geospatial map database.

350.   The time-space filtering derives a position to be displayed for a user.

351.    Google Maps uses several sources to determine location.

352.    Google Maps updates previous location data with more recent location information so as to give an accurate position for a user.

353.    Google also tracks velocity (e.g., how fast you are going).

354.    Google determines the physical position in the world's frame of reference.

355.    Google Maps utilizes a measured position, a previous position (e.g., last available position), and a previous velocity (e.g., speed with orientation) to derive a true position of the user.

356.    The Accused IMU/GPS Products display the trajectory of a user on its graphic displaying unit that tracks a motion of the user.

357.    A mapping application (e.g., Google Maps), can display the trajectory (e.g., track or course) of the user as indicated by a symbol such as an arrow or a line.

358.    For example, the Axon Pro has a 5.5-inch display and Google Maps that displays the trajectory of a user.

359.    Direct infringement of claim 1 of the '353 Patent occurs when ZTE and end users use an Accused IMU/GPS Products in a manner such that it practices the claimed method.

360.    ZTE infringes claim 1 of the '353 Patent by making and selling Accused IMU/GPS Products designed to practice the claimed process.

361.    In addition, ZTE infringes claim 1 of the '353 Patent by using the Accused IMU/GPS Products directly, including in relation to product testing.

362.    In the alternative, ZTE induces infringement of claim 1 of the '353 Patent by end users including by distributing the Accused IMU/GPS Products that practice the claimed process in ordinary use.

363.    ZTE has knowledge of the '353 Patent and AGNC's allegations of how the Accused IMU/GPS Products infringe claim 1 of the '353 Patent since at least June 29, 2016.

364.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE has infringed and continues to infringe at least claim 1 of the '353 Patent under 35 U.S.C. § 271(a) directly.

365.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 1 of the '353 Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 1 of the '353 Patent under 35 U.S.C. § 271(b).

366.    ZTE has had actual knowledge of the '353 Patent since at least June 29, 2016.

367.    ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 1 of the '353 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused IMU/GPS Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other

forms of support that induce its customers and/or end users to directly infringe at least claim 1 of the '353 Patent by using the Accused IMU/GPS Products.

**COUNT IX: INFRINGEMENT OF PAT. 6,792,353 CLAIM 2**

368.    AGNC reasserts and realleges paragraphs 1 through 55 and paragraphs 317 through 367 of this Complaint as though set forth fully here.

369.    Claim 2 of the '353 Patent provides:

| Claim 2 | An enhanced inertial measurement unit/global positioning system and map navigation process, as recited in claim 1, further comprising a step of displaying said retrieved geospatial data on said graphic displaying unit as a background. |
|---------|---|

370.    The Accused IMU/GPS Products are used to meet each of the limitations of claim 2 of the '353 Patent.

371.    The Accused IMU/GPS Products contain a display.

372.    The display device is used to display the geospatial data as a background.

373.    For example, the Axon Pro has a 5.5-inch display and Google Maps that displays the retrieved geospatial data as a background.

374.    Direct infringement of claim 2 of the '353 Patent occurs when ZTE or end users use an Accused IMU/GPS Product in a manner such that it practices the claimed method.

375.    ZTE infringes claim 2 of the '353 Patent by making and selling Accused IMU/GPS Products designed to practice the claimed process.

376.    In addition, ZTE infringes claim 2 of the '353 Patent by using the Accused IMU/GPS Products directly, including in relation to product testing.

377.    In the alternative, ZTE induces infringement of claim 2 of the '353 Patent by end users including by distributing the Accused IMU/GPS Products that practice the claimed process in ordinary use.

378.    ZTE has knowledge of the '353 Patent and AGNC's allegations of how the Accused IMU/GPS Products infringe claim 2 of the '353 Patent since at least June 29, 2016.

379.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE has infringed and continues to infringe at least claim 2 of the '353 Patent under 35 U.S.C. § 271(a) directly.

380.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 2 of the '353 Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 2 of the '353 Patent under 35 U.S.C. § 271(b).

381.    ZTE has had actual knowledge of the '353 Patent since at least June 29, 2016.

382.    ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 2 of the '353 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused IMU/GPS Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other

forms of support that induce its customers and/or end users to directly infringe at least claim 2 of the '353 Patent by using the Accused IMU/GPS Products.

**COUNT X: INFRINGEMENT OF PAT. 6,792,353 CLAIM 3**

383.    AGNC reasserts and realleges paragraphs 1 through 55, paragraphs 317 through 367, and paragraphs 371 through 382 of this Complaint as though set forth fully here.

384.    Claim 3 of the '353 Patent provides:

| Claim 3 | An enhanced inertial measurement unit/global positioning system and map navigation process, as recited in claim 2, further comprising a step of displaying an accurate position of said user on said graphic displaying unit as a mark. |
|---|---|

385.    The Accused IMU/GPS Products are used to meet each of the limitations of claim 3 of the '353 Patent.

386.    The Accused IMU/GPS Products contain a display.

387.    The display device is used to display an accurate position of a user as a mark.

388.    For example, the Axon Pro has a 5.5-inch display and Google Maps that displays the accurate position of a user as a mark.

389.    Direct infringement of claim 3 of the '353 Patent occurs when ZTE and end users use an Accused IMU/GPS Product in a manner such that it practices the claimed method.

390.    ZTE infringes claim 3 of the '353 Patent by making and selling Accused IMU/GPS Products designed to practice the claimed process.

391.     In addition, ZTE infringes claim 3 of the '353 Patent by using the Accused IMU/GPS Products directly, including in relation to product testing.

392.     In the alternative, ZTE induces infringement of claim 3 of the '353 Patent by end users including by distributing the Accused IMU/GPS Products that practice the claimed process in ordinary use.

393.     ZTE has knowledge of the '353 Patent and AGNC's allegations of how the Accused IMU/GPS Products infringe claim 3 of the '353 Patent since at least June 29, 2016.

394.     ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE has infringed and continues to infringe at least claim 3 of the '353 Patent under 35 U.S.C. § 271(a) directly.

395.     ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 3 of the '353 Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 3 of the '353 Patent under 35 U.S.C. § 271(b).

396.     ZTE has had actual knowledge of the '353 Patent since at least June 29, 2016.

397.     ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 3 of the '353 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused IMU/GPS Products by providing technical guides, product data sheets,

demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 3 of the '353 Patent by using the Accused IMU/GPS Products.

**COUNT XI: INFRINGEMENT OF PAT. 6,792,353 CLAIM 6**

398.    AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

399.    Claim 6 of the '353 Patent provides:

| Preamble of Claim 6 | An enhanced inertial measurement unit/global positioning system and map navigation process, comprising the steps of: |
| --- | --- |
| Element A | (a) receiving a position of a user from an inertial measurement unit/global positioning system device; |
| Element B | (b) converting a global coordinate to a local coordinate to match a coordinate system employed in a map database; |
| Element C | (c) retrieving geospatial data from a geospatial map database based on said measured position from said inertial measurement unit/global positioning system device by using a tile index file which stores geographic extent information of tiles; wherein said tiles are geographically subdividing a coverage solely for a purpose of enhancing data management; wherein a geographic extent of an access area is compared with said geographic extent of said tiles to derive a plurality of involved tiles for said access area; |
| Element D | (d) performing time-space filtering based on said measured position and said retrieved geospatial data from said geospatial map database to derive a displaying position for a user; wherein said measured position and a previous position and a previous velocity are used to derive a true position for said user; and |
| Element E | (e) performing coordinate conversion from said local coordinate to a pixel coordinate and displaying said position of said user on a graphic displaying unit. |

400.    The Accused IMU/GPS Products are used to meet each and every element of claim 6 of the '353 Patent.

401.    The Accused IMU/GPS Products are inertial measurement unit/global positioning systems that perform a map navigation process with a mapping application.

402.    The Accused IMU/GPS Products have an Android operating system.

403.    An Android operating system is pre-loaded on each Accused IMU/GPS Product before the product reaches the end-user.

404.    Accused IMU/GPS Products contain Google Maps.

405.    Google Maps is pre-loaded on each Accused IMU/GPS Products before the product reaches the end-user.

406.    The Accused IMU/GPS Products contain a micro electro-mechanical ("MEMS") gyroscope.

407.    The Accused IMU/GPS Products contain a MEMS accelerometer.

408.    The Accused IMU/GPS Products contain a micro inertial measurement unit that comprises a MEMS gyroscope and MEMS accelerometer.

409.    The Accused IMU/GPS Products contain a GPS transceiver.

410.    The Accused IMU/GPS Products contain a display.

411.    The Accused IMU/GPS Products receive a position from an integrated inertial measurement unit/global positioning system device (e.g., IMU and GPS).

412.    The Accused IMU/GPS Products include a Qualcomm Snapdragon processor.

413.    For example, the Axon Pro has a Qualcomm Snapdragon 810 processor.

414.    The Qualcomm Snapdragon processor has Qualcomm IZat location technology that provides ubiquitous location information indoors, outdoors, and in urban canyons).

415.     The Qualcomm Snapdragon processor has Qualcomm IZat location technology that offers uninterrupted coverage.

416.     The Accused IMU/GPS Products contain an IMU that is used for sensing motion measurements and produces positioning data.

417.     The Accused IMU/GPS Products' Qualcomm Snapdragon processor's IZat location engine processes measurements from inertial sensors including accelerometers and gyroscopes.

418.     The Accused IMU/GPS Products' GPS receiver provides positioning data.

419.     Qualcomm's IZat contained in the Accused IMU/GPS Products uses positioning data from the IMU and positioning data from the GPS receiver to provide a measured position.

420.     Google Maps is powered by the Fused Location Provider ("FLP") that combines GPS, Wi-Fi, cell, accelerometer, gyroscope, and magnetometer data and manages battery consumption.

421.     The Android API incorporates sensor fusion algorithms that combine accelerometer, gyroscope, magnetometer, and barometer with raw GPS pseudoranges.

422.     The Accused IMU/GPS Products convert a global coordinate (e.g., latitude and longitude) to a local coordinate to match a coordinate system used in a map database (for example, to load the proper map data).

423.     The Accused IMU/GPS Products use a mapping application (e.g., Google Maps) to retrieve geospatial data from a geospatial map database.

424.     The geospatial data is retrieved based on the measured positions from the IMU/GPS device.

425.     The geospatial data is retrieved by using a tile index file.

426.     The tile index file stores geographic extent information of tiles.

427.     The tiles geographically subdivide a coverage for enhancing data management.

428.     The Google Maps API determines which tiles are needed and translates that information into a set of tiles to retrieve.

429.     The geographic extent of an access area (e.g., the access area that is encompassed within the display screen of an Accused IMU/GPS Products) is compared (e.g., using zoom level, map tile location in the grid, etc.) with the geographic extent of the tiles to determine a plurality of involved tiles for the access area.

430.     The Accused IMU/GPS Products use IMU/GPS and a mapping application (e.g., Google Maps) to perform time-space-filtering based on the measured position of a device and the retrieved geospatial data from a geospatial map database.

431.     Google Maps derives a position to be displayed for a user.

432.     Google Maps uses several sources to determine location.

433.     Google Maps updates previous location data with more recent location information so as to give an accurate position for a user.

434.     Google also tracks velocity (e.g., how fast you are going).

435.     Google determines the physical position in the world's frame of reference.

436.     Google Maps utilizes a measured position, a previous position (e.g., last available), and a previous velocity (e.g., speed with orientation) to derive a true position of the user.

437.    The Accused IMU/GPS Products convert the local coordinate to a pixel coordinate.

438.    The Accused IMU/GPS Products display the position of a user on its graphic displaying unit.

439.     A mapping application (e.g., Google Maps) displays the position of the user as indicated by a symbol such as a dot.

440.    For example, the Axon Pro has a 5.5-inch display and Google Maps that displays the position of a user.

441.    Direct infringement of claim 6 of the '353 Patent occurs when ZTE and end users use an Accused IMU/GPS Products in a manner such that it practices the claimed method.

442.    ZTE infringes claim 6 of the '353 Patent by making and selling Accused IMU/GPS Products designed to practice the claimed process.

443.    In addition, ZTE infringes claim 6 of the '353 Patent by using the Accused IMU/GPS Products directly, including in relation to product testing.

444.    In the alternative, ZTE induces infringement of claim 6 of the '353 Patent by end users including by distributing the Accused IMU/GPS Products that practice the claimed process in ordinary use.

445.    ZTE has had knowledge of the '353 Patent since June 29, 2016 and AGNC's allegations of how the Accused IMU/GPS Products infringe claim 6 of the '353 Patent since at least the date of this Complaint.

446.     ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE has infringed and continues to infringe at least claim 1 of the '353 Patent under 35 U.S.C. § 271(a) directly.

447.     ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 6 of the '353 Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 6 of the '353 Patent under 35 U.S.C. § 271(b).

448.     ZTE has had actual knowledge of the '353 Patent since at least June 29, 2016.

449.     ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 6 of the '353 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused IMU/GPS Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 6 of the '353 Patent by using the Accused IMU/GPS Products.

**COUNT XII: INFRINGEMENT OF PAT. 6,792,353 CLAIM 7**

450.     AGNC reasserts and realleges paragraphs 1 through 55 and paragraphs 399 through 449 of this Complaint as though set forth fully here.

451.     Claim 7 of the '353 Patent provides:

| Claim 7 | An enhanced inertial measurement unit/global positioning system and map navigation process, as recited as claim 6, wherein said inertial measurement unit/global positioning system device comprises a micro IMU, a GPS receiver and means for blending measurements from said micro IMU and said GPS receiver. |
|---|---|

452.   The Accused IMU/GPS Products are used to meet each of the limitations of claim 7 of the '353 Patent.

453.   The Accused IMU/GPS Products have an Android operating system.

454.   An Android operating system is pre-loaded on each Accused IMU/GPS Product before the product reaches the end-user.

455.   Accused IMU/GPS Products contain Google Maps.

456.   Google Maps is pre-loaded on each Accused IMU/GPS Products before the product reaches the end-user.

457.   The Accused IMU/GPS Products contain a micro electro-mechanical ("MEMS") gyroscope.

458.   The Accused IMU/GPS Products contain a MEMS accelerometer.

459.   The Accused IMU/GPS Products contain a micro inertial measurement unit that comprises a MEMS gyroscope and MEMS accelerometer.

460.   The Accused IMU/GPS Products contain a GPS transceiver.

461.   The Accused IMU/GPS Products contain a display.

462.   The Accused IMU/GPS Products receive a position from an integrated inertial measurement unit/global positioning system device (e.g., IMU and GPS).

463.   The Accused IMU/GPS Products include a Qualcomm Snapdragon processor.

464.    For example, the Axon Pro has a Qualcomm Snapdragon 810 processor.

465.    The Qualcomm Snapdragon processor has Qualcomm IZat location technology that provides ubiquitous location information indoors, outdoors, and urban canyons.

466.    The Qualcomm Snapdragon processor has Qualcomm IZat location technology that offers uninterrupted coverage.

467.    The Accused IMU/GPS Products contain an IMU that is used for sensing motion measurements and produces positioning data.

468.    The Accused IMU/GPS Products' Qualcomm Snapdragon processor's IZat location engine processes measurements from inertial sensors including accelerometers and gyroscopes.

469.    The Accused IMU/GPS Products' GPS receiver provides positioning data.

470.    Qualcomm's IZat contained in the Accused IMU/GPS Products uses positioning data from the IMU and positioning data from the GPS receiver to provide a measured position.

471.    Google Maps is powered by the Fused Location Provider ("FLP") that combines GPS, Wi-Fi, cell, accelerometer, gyroscope, and magnetometer data and manages battery consumption.

472.    The Accused IMU/GPS Products blend measurements from the IMU and GPS.

473.    The Android API incorporates sensor fusion algorithms that combine accelerometer, gyroscope, magnetometer, and barometer with raw GPS pseudoranges.

474.    Direct infringement of claim 7 of the '353 Patent occurs when ZTE and end users use an Accused IMU/GPS Products in a manner such that it practices the claimed method.

475.    ZTE infringes claim 7 of the '353 Patent by making and selling Accused IMU/GPS Products designed to practice the claimed process.

476.    In addition, ZTE infringes claim 7 of the '353 Patent by using the Accused IMU/GPS Products directly, including in relation to product testing.

477.    In the alternative, ZTE induces infringement of claim 7 of the '353 Patent by end users including by distributing the Accused IMU/GPS Products that practice the claimed process in ordinary use.

478.    ZTE has had knowledge of the '353 Patent sice at least June 29, 2016 and AGNC's allegations of how the Accused IMU/GPS Products infringe claim 7 of the '353 Patent since at least the date of this Complaint.

479.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE has infringed and continues to infringe at least claim 7 of the '353 Patent under 35 U.S.C. § 271(a) directly.

480.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused IMU/GPS Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 7 of the '353 Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 7 of the '353 Patent under 35 U.S.C. § 271(b).

481.    ZTE has had actual knowledge of the '353 Patent since at least June 29, 2016.

482.    ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 7 of the '353 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused IMU/GPS Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 7 of the '353 Patent by using the Accused IMU/GPS Products.

**COUNT XIII: INFRINGEMENT OF PAT. 6,415,227 CLAIM 1**

483.    AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

484.    Claim 1 of the '227 Patent provides:

| Preamble of Claim 1 | An enhanced global positioning system and map navigation process, comprising said steps of: |
|---|---|
| Element A | (a) receiving a measured position from a global positioning system receiver; |
| Element B | (b) retrieving geospatial data from a geospatial map database based on said measured position from said global positioning system receiver by using a tile index file, wherein said tile index file stores geographic extent information of tiles which are geographically subdividing a coverage solely for a purpose of enhancing data management; wherein a geographic extent of an access area is compared with said geographic extent of said tiles to derive a plurality of involved tiles for said access area; |
| Element C | (c) performing time-space filtering based on said measured position and said retrieved geospatial data from said geospatial map database to derive a displaying position for a user; wherein said measured position and a previous position and a previous velocity are used to derive a true position for said user; and |
| Element D | (d) displaying a trajectory of said user on a graphic displaying unit, which tracks a motion of said user. |

485.    ZTE makes, uses, sells, offers for sale and imports wireless mobile devices, including mobile phones and tablets that include a GPS, map database (e.g., Google Maps) and a display ("Accused GPS System Products").  Accused GPS System Products include, for example, at least the Axon Pro, Avid Plus, Axon 7, Axon 7 Mini, Zmax Pro, Grand X 3, Grand Memo II, and the AT&T Trek 2.

486.    ZTE has and continues to manufacture, use, sell, import, and/or offer for sale the Accused GPS System Products that are used to meet each and every element of claim 1 of the '227 Patent.

487.    The Accused GPS System Products include global positioning systems that perform a map navigation process with a mapping application (e.g., Google Maps).

488.    Google Maps is pre-loaded on each Accused GPS System Product before the product reaches the end-user.

489.    The Accused GPS System Products each contain a GPS transceiver.

490.    The Accused GPS System Products each contain a display.

491.    The Accused GPS System Products receive a measured position from a global positioning system receiver.

492.    The Accused GPS System Products use a mapping application (e.g., Google Maps) to retrieve geospatial data from a geospatial map database.

493.    The geospatial data is retrieved based on the measured positions from the GPS receiver.

494.    The geospatial data is retrieved by using a tile index file.

495.    The tile index file stores geographic extent information of tiles.

496.    The tiles geographically subdivide a coverage for enhancing data management.

497.    The Google Maps API determines which tiles are needed and translates that information into a set of tiles to retrieve.

498.    The geographic extent of an access area (e.g., the access area that is encompassed within the display screen of an Accused GPS System Product) is compared (e.g., using zoom level, map tile location in the grid, etc.) with the geographic extent of the tiles to determine a plurality of involved tiles for the access area.

499.    The Accused GPS System Products use GPS and a mapping application (e.g., Google Maps) to perform time-space-filtering based on the measured position of a device and the retrieved geospatial data from a geospatial map database.

500.    The time-space filtering derives a displaying position for a user.

501.    Google Maps uses several sources to determine location.

502.    Google Maps updates previous location data with more recent location information so as to give an accurate position for a user.

503.    Google also tracks velocity (e.g., how fast you are going).

504.    Google determines the physical position in the world's frame of reference.

505.    Google Maps uses a measured position, a previous position (e.g., last available position), and a previous velocity (e.g., speed with orientation) to derive a true position of the user.

506.    The Accused GPS System Products display the trajectory of a user on its graphic displaying unit that tracks a motion of the user.

507.    A mapping application (e.g., Google Maps), can display the trajectory (e.g., track or course) of the user as indicated by a symbol such as an arrow or a line.

508.    For example, the Axon Pro has a 5.5-inch display and Google Maps that displays a trajectory of a user.

509.    Direct infringement of claim 1 of the '227 Patent occurs when ZTE or end users use an Accused GPS System Product in a manner that practices the claimed method.

510.    ZTE infringes claim 1 of the '227 Patent by making and selling the Accused GPS System Products designed to practice the claimed process.

511.    In addition, ZTE infringes claim 1 of the '227 Patent by using the Accused GPS System Products directly, including in relation to product testing.

512.    In the alternative, ZTE induces infringement of claim 1 of the '227 Patent by end users including by distributing the Accused GPS System Products that practice the claimed process in ordinary use.

513.    ZTE has knowledge of the '227 Patent and AGNC's allegations of how the Accused GPS System Products infringe claim 1 of the '227 Patent since at least June 29, 2016.

514.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused GPS System Products knowing that ZTE has infringed and continues to infringe at least claim 1 of the '227 Patent under 35 U.S.C. § 271(a) directly.

515.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused GPS System Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 1 of the '227

Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 1 of the '227 Patent under 35 U.S.C. § 271(b).

516.     ZTE has had actual knowledge of the '227 Patent since at least June 29, 2016.

517.     ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 1 of the '227 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused GPS System Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 1 of the '227 Patent by using the Accused GPS System Products.

**COUNT XIV: INFRINGEMENT OF PAT. 6,415,227 CLAIM 2**

518.     AGNC reasserts and realleges paragraphs 1 through 55 and paragraphs 484 through 517 of this Complaint as though set forth fully here.

519.     Claim 2 of the '227 Patent provides:

| Claim 2 | An enhanced global positioning system and map navigation process, as recited in claim 1, before the step (c), further comprising a step of displaying said retrieved geospatial data on said graphic displaying unit as a background. |
|---------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

520.     The Accused GPS System Products are used to meet each and every limitation of claim 2 of the '227 Patent.

521.     The Accused GPS System Products contain a display.

522.     The display is used to display the geospatial data as a background.

523.     For example, the Axon Pro has a 5.5-inch display and Google Maps that displays the geospatial data as a background.

524.     Direct infringement of claim 2 of the '227 Patent occurs when ZTE or end users use an Accused GPS System Product in a manner that practices the claimed method.

525.     ZTE infringes claim 2 of the '227 Patent by making and selling the Accused GPS System Products designed to practice the claimed process.

526.     In addition, ZTE infringes claim 2 of the '227 Patent by using the Accused GPS System Products directly, including in relation to product testing.

527.     In the alternative, ZTE induces infringement of claim 2 of the '227 Patent by end users including by distributing the Accused GPS System Products that practice the claimed process in ordinary use.

528.     ZTE has knowledge of the '227 Patent since June 29, 2016 and AGNC's allegations of how the Accused GPS Products infringe claim 2 of the '227 Patent since at least the date of this Complaint.

529.     ZTE makes, uses, offers to sell, sells, and/or imports the Accused GPS System Products knowing that ZTE has infringed and continues to infringe at least claim 2 of the '227 Patent under 35 U.S.C. § 271(a) directly.

530.     ZTE makes, uses, offers to sell, sells, and/or imports the Accused GPS System Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 2 of the '227 Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 2 of the '227 Patent under 35 U.S.C. § 271(b).

531.     ZTE has had actual knowledge of the '227 Patent since at least June 29, 2016.

532.     ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 2 of the '227 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused GPS System Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 2 of the '227 Patent by using the Accused GPS System Products.

## COUNT XV: INFRINGEMENT OF PAT. 6,415,227 CLAIM 3

533.     AGNC reasserts and realleges paragraphs 1 through 55, paragraphs 484 through 517, and paragraphs 519 through 532 of this Complaint as though set forth fully here.

534.     Claim 3 of the '227 Patent provides:

| Claim 3 | An enhanced global positioning system and map navigation process, as recited in claim 2, after the step (c), further comprising a step of displaying an accurate position of said user on said graphic displaying unit as a mark. |
|---|---|

535.     The Accused GPS System Products are used to meet each and every limitation of claim 3 of the '227 Patent.

536.     The Accused GPS System Products contain a display.

537.     The display is used to display an accurate position of a user as a mark (e.g., pinpoint dot).

538.    For example, the Axon Pro has a 5.5-inch display and Google Maps that displays an accurate position of a user as a mark.

539.    Direct infringement of claim 3 of the '227 Patent occurs when ZTE or end users use an Accused GPS System Product in a manner that practices the claimed method.

540.    ZTE infringes claim 3 of the '227 Patent by making and selling the Accused GPS System Products designed to practice the claimed process.

541.    In addition, ZTE infringes claim 3 of the '227 Patent by using the Accused GPS System Products directly, including in relation to product testing.

542.    In the alternative, ZTE induces infringement of claim 3 of the '227 Patent by end users including by distributing the Accused GPS System Products that practice the claimed process in ordinary use.

543.    ZTE has knowledge of the '227 Patent since June 29, 2016 and AGNC's allegations of how the Accused GPS System Products infringe claim 3 of the '227 Patent since at least the date of this Complaint.

544.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused GPS System Products knowing that ZTE has infringed and continues to infringe at least claim 3 of the '227 Patent under 35 U.S.C. § 271(a) directly.

545.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused GPS System Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 3 of the '227 Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 3 of the '227 Patent under 35 U.S.C. § 271(b).

546.    ZTE has had actual knowledge of the '227 Patent since at least June 29, 2016.

547.    ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 3 of the '227 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused GPS System Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 3 of the '227 Patent by using the Accused GPS System Products.

**COUNT XVI: INFRINGEMENT OF PAT. 6,415,227 CLAIM 36**

548.    AGNC reasserts and realleges paragraphs 1 through 55 of this Complaint as though set forth fully here.

549.    Claim 36 of the '227 Patent provides:

| Preamble of Claim 36 | An enhanced global positioning system and map navigation process, comprising the steps of: |
|---|---|
| Element A | (a) receiving a position of a user from a position determination device; |
| Element B | (b) converting a global coordinate to a local coordinate to match a coordinate system employed in a map database: |
| Element C | (c) retrieving geospatial data from a geospatial map database based on said measured position from said global positioning system receiver by using a tile index file which stores geographic extent information of tiles; wherein said tiles are geographically subdividing a coverage solely for a purpose of enhancing data management; wherein a geographic extent of an access area is compared with said geographic extent of said tiles to derive a plurality of involved tiles for said access area. |
| Element D | (d) performing time-space filtering based on said measured position and said retrieved geospatial data from said geospatial map database to derive a displaying position for a user; wherein said measured position and a previous position and a previous velocity are used to derive a true position for said user; and |
| Element E | (e) performing coordinate conversion from said local coordinate to a pixel coordinate and displaying said position of said user on a graphic displaying unit. |

550.    The Accused GPS System Products are used to meet each and every limitation of claim 36 of the '227 Patent.

551.    The Accused GPS System Products are enhanced global positioning systems that perform a map navigation process with a mapping application.

552.    Google Maps is pre-loaded on each Accused GPS System Product before the product reaches the end-user.

553.    The Accused GPS System Products contain a GPS transceiver.

554.    The Accused GPS System Products include a display.

555.    The Accused GPS System Products receive a position from a positioning determination device, e.g., the global positioning system receiver.

556.    The Accused GPS System Products convert a global coordinate (e.g., latitude and longitude) to a local coordinate to match a coordinate system used in a map database (for example, to load the proper map data).

557.    The geospatial data is retrieved based on the measured positions from the GPS receiver.

558.    The geospatial data is retrieved by using a tile index file.

559.    The tile index file stores geographic extent information of tiles.

560.    The tiles geographically subdivide a coverage for enhancing data management.

561.    The Google Maps API determines which tiles are needed and translates that information into a set of tiles to retrieve.

562.    The geographic extent of an access area (e.g., the access area that is encompassed within the display screen of an Accused GPS System Product) is compared (e.g., using zoom level, map tile location in the grid, etc.) with the geographic extent of the tiles to determine a plurality of involved tiles for the access area.

563.    The Accused GPS System Products use GPS and a mapping application (e.g., Google Maps) to perform time-space-filtering based on the measured position of a device and the retrieved geospatial data from a geospatial map database.

564.    Google Maps derives a position for a user.

565.    Google Maps uses several sources to determine location.

566.    Google Maps updates previous location data with more recent location information so as to give an accurate position for a user.

567.    Google also tracks velocity (e.g., how fast you are going).

568.   Google determines the physical position in the world's frame of reference.

569.   Google Maps uses a measured position, a previous position (e.g., last available position), and a previous velocity (e.g., speed with orientation) to derive a true position of the user.

570.   The Accused GPS System Products convert the local coordinate to a pixel coordinate.

571.   The Accused GPS System Products display the position of a user on its graphic displaying unit.

572.   A mapping application (e.g., Google Maps), displays the position of the user as indicated by a symbol such as a dot.

573.   For example, the Axon Pro has a 5.5-inch display and Google Maps that display the position of a user.

574.   Direct infringement of claim 36 of the '227 Patent occurs when ZTE or end users use an Accused GPS System Products in a manner such that practices the claimed method.

575.   ZTE infringes claim 36 of the '227 Patent by making and selling the Accused GPS System Products designed to practice the claimed process.

576.   In addition, ZTE infringes claim 36 of the '227 Patent by using the Accused GPS System Products directly, including in relation to product testing.

577.   In the alternative, ZTE induces infringement of claim 36 of the '227 Patent by end users including by distributing the Accused GPS System Products that practice the claimed process in ordinary use.

578.    ZTE has knowledge of the '227 Patent since June 29, 2016 and AGNC's allegations of how the Accused GPS System Products infringe claim 36 of the '227 Patent since at least the date of this Complaint.

579.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused GPS System Products knowing that ZTE has infringed and continues to infringe at least claim 36 of the '227 Patent under 35 U.S.C. § 271(a) directly.

580.    ZTE makes, uses, offers to sell, sells, and/or imports the Accused GPS System Products knowing that ZTE's customers and/or end users have directly infringed and are directly infringing each and every claim limitation of at least claim 36 of the '227 Patent.  ZTE actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 36 of the '227 Patent under 35 U.S.C. § 271(b).

581.    ZTE has had actual knowledge of the '227 Patent since at least June 29, 2016.

582.    ZTE has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 36 of the '227 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. ZTE's inducement includes, for example, encouraging customers to turn on and use the Accused GPS System Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 36 of the '227 Patent by using the Accused GPS System Products.

**WILLFUL INFRINGEMENT**

583.    ZTE has infringed and continues to infringe the above identified claims of each of the Patents-in-Suit despite its knowledge of the Patents-in-Suit, knowledge of how its accused systems infringe the Patents-in-Suit since at least June 29, 2016 and the objectively high likelihood that its actions constitute patent infringement.

584.    ZTE's infringement of the Patents-in-Suit is willful and deliberate, entitling AGNC to enhanced damages under 35 U.S.C. §284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. §285.

**JURY DEMAND**

AGNC demands a trial by jury on all issues that may be so tried.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff AGNC requests that this Court enter judgment in its favor and against Defendants ZTE Corporation, ZTE (USA) Inc., and ZTE (TX) Inc. as follows:

A.    Adjudging, finding, and declaring that ZTE has infringed the above-identified claims of each of the Patents-in-Suit under 35 U.S.C. § 271;

B.    Awarding the past and future damages arising out of ZTE's infringement of the Patents-in-Suit to AGNC in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C.      Adjudging, finding, and declaring that ZTE's infringement is willful and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D.      Adjudging, finding, and declaring that the Patents-in-Suit are valid and enforceable;

E.      Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F.      Granting AGNC such other further relief as is just and proper, or as the Court deems appropriate.

Dated: February 3, 2017                              Respectfully submitted,

*/s/ David Berten by permission*
*Claire Henry*
David Berten
IL Bar # 6200898
dberten@giplg.com
Alison Aubry Richards
IL Bar # 6285669
arichards@giplg.com
Alexander Debski
IL Bar # 630715
adebski@giplg.com
Global IP Law Group, LLC
55 West Monroe Street
Suite 3400
Chicago, IL 60603
T: (312) 241-1500
F: (312) 241-1522

T. John Ward, Jr.
State Bar No. 00794818
Claire Henry
State Bar No. 24053063
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, Texas 75606-1231
Telephone: (903) 757-6400

Facsimile: (903) 757-2323
Email: jw@jwfirm.com
Email: claire@wsfirm.com

*Attorneys for Plaintiff American GNC*
*Corporation*